This is an appeal from a judgment of the district court of Williams county denying injunctional relief against the defendant board of education of the city of Williston.
The defendant, the board of education of the city of Williston, is a special school district. It has organized and conducts a standardized high school. Defendant, Urness, is its superintendent. For a number of years a large proportion (in 1925-26, 136 out of 353) of the pupils in attendance at the Williston high school have been children not resident within the district. The district had no accommodation for these outside pupils and was so situated financially that it was able to provide facilities to properly accommodate only students resident within its boundaries. However, a plan was adopted under which nonresident pupils attending the high school paid a tuition charge, thus providing funds wherewith the Williston district was enabled to increase its facilities and accommodate them. Preparatory to beginning the school year of 1925-26 the defendant, board of education, computed the cost per pupil of maintaining the high school and ascertained that it was approximately $98 per pupil for a year of thirty-six weeks, considering the whole number of pupils in attendance. Items taken into account in making this computation were teachers' salaries, supplies, janitor service, heat, light, and water. Accordingly the board consistently with the plan theretofore followed by it passed a resolution fixing the tuition of nonresident pupils at $94.
Plaintiff resides near the city of Williston but not within the Williston school district. His minor sons, Kenneth and Norman, attended the Williston high school in the year 1924-25. Under chapter 107, Sess. Laws 1921, the district wherein plaintiff resided paid the statutory tuition charge of $1.50 per week, or $54 for the school year. Plaintiff refused to pay any additional charge. In August 1925, Urness, the superintendent, wrote to all the nonresident pupils who had attended the high school the preceding year inquiring if they desired to attend during the year 1925-26 and requested if they did intend to do so that they notify the school board to that effect prior to the beginning of the school year. No response was made to the letters written to Kenneth and Norman, but on September 7th, 1925, the first day of the school year, they presented themselves at the school for enrolment, one of them as a junior and the other as a senior. They were advised that *Page 239 
they could not be enrolled unless payment were made or assurance given that it would be made in the amount as required by the resolution of the board. They refused to make this payment and were not formally enrolled, although they were permitted to remain in the school and participate in the classes pending adjustment of the matter. On September 21st the boys tendered $20 each, or one half of the excess payment of $40 over the amount required to be paid by the district of their residence and demanded that they be enrolled. This tender was refused for the reason that there were no assurances as to the payment of the remainder of such tuition charge, and the boys were denied further school accommodations. Whereupon plaintiff began this action to enjoin the defendants from interfering with and refusing to allow the boys to pursue their course of study in such school and complete the school year therein. Trial was had upon the merits. The court made its findings of fact substantially as above set out and denied the relief prayed, but ordered that the children be permitted to remain in school subject to the final disposition of the case on appeal. Judgment was entered accordingly. The plaintiff perfected this appeal therefrom and the cause is now here for trial de novo.
Plaintiff contends that it appears upon the record that the defendant board of education of the city of Williston had proper and sufficient facilities in the high school as maintained by it to accommodate his children during the year 1925-26; that under the statute, chapter 107, Sess. Laws 1921, while the board has the right to exercise its discretion in determining whether or not it has facilities to enable it to accommodate nonresident pupils, any arbitrary or unreasonable exercise of that discretion is subject to review and correction by the courts, and under the circumstances the refusal to receive plaintiff's children constituted such an abuse of discretion; that if it had not sufficient facilities to accommodate all of the nonresident pupils applying for admission into the high school it showed unfair discrimination by rejecting his children and accepting others who later made application for admission; that the tuition fee is fixed by the statute and the board of education has no authority to increase such charge regardless of the actual expenses it may be under in conducting its high school; that however it may secure the funds required to enable it to organize and conduct such high school, if as conducted it has facilities to accommodate outside *Page 240 
children, it must do so for the statutory fee of $54 to be paid by the district of residence. On the other hand, the defendant contends that the exercise of judgment on the part of the board as to whether it has facilities for outside pupils is not subject to review except when arbitrarily exercised; that in the instant case there were no facilities to enable the board to receive outside pupils and the board so determined; that the board was unable to make provision for and to receive outside pupils unless it imposed a tuition charge in approximately the amount of the actual cost per pupil of carrying on the school and therefore such charge was lawfully made; that the same tuition charge was imposed on all outside pupils and by means thereof the board was able to provide such facilities as it had; that there was no discrimination as against the children of the plaintiff.
Plaintiff's cause is bottomed on chapter 107, Sess. Laws 1921. This act provides:
"Sec. 1. . . . The school district board or board of education in any school district having a standardized graded school or standardized high school shall admit to the high school department, whenever the facilities for seating and instruction will warrant, any nonresident pupil who is prepared to enter such high school department; . . .
"Sec. 2. It shall be the duty of any school district not having a full four year high school course . . . to pay the tuition of pupils residing in such district that enter the high school department in any standardized graded school or standardized high school department in the state to complete such part of a full four year high school course . . . as is not offered in the district in which the pupil resides. The school district board or board of education of the district in which the standardized high school is located shall be entitled and is hereby authorized to charge a tuition fee for such nonresident pupil not to exceed one and one half dollars per week for the time such nonresident pupils are in attendance; . . .
"Sec. 3. (Provides for the presentation and collection of claims for tuition.)
"Sec. 4. All acts or parts of acts in so far as they conflict herewith are hereby repealed."
His contention is (1) that under § 1 thereof the defendant board has no option but is required to receive his children if the facilities *Page 241 
for seating and instruction will warrant; and (2) that under section 2 of the statute the board is authorized and permitted to make a charge for tuition of not to exceed one and one half dollars per week per pupil, and any greater charge is unlawful and cannot be exacted.
This statute, however, must be considered as a whole and so considered it seems plain that the legislature intended the limitation of the tuition charge to one and one half dollars per week per pupil to apply only in those cases where facilities in the way of seating and instruction in high schools as conducted warrant the admission of outside pupils. The Constitution, §§ 147 and 148, requires the establishment and maintenance by the state of a uniform system of free public schools, but this requirement is satisfied by provision for the creation of school districts and for a uniform system of schools in those districts. See 24 R.C.L. 559 et seq.; 35 Cyc. 998 et seq. The constitutional requirement surely does not contemplate that school facilities provided in any district by means of taxes imposed therein shall be available to pupils from other districts without charge. To hold that it does would require that the constitutional guaranty of uniformity of taxation be disregarded. See High School Dist. v. Lancaster County, 60 Neb. 147, 49 L.R.A. 343, 83 Am. St. Rep. 525, 82 N.W. 380; Wilkinson v. Lord, 85 Neb. 136, 24 L.R.A.(N.S.) 1104, 122 N.W. 699. So we must presume that the legislature in enacting chapter 107, supra, intended not that nonresident pupils should be given high school privileges at a loss to the district affording them, but rather that where such district already had facilities for the seating and instruction of nonresident pupils the compensation provided for in § 2 of the act would cover any additional expense that might be incurred through receiving such pupils. The school affording such privileges is protected against loss by having the question of facilities left to the judgment of its governing board. See State ex rel. Groves v. School Dist.101 Neb. 263, 162 N.W. 640; Chambers v. Everett, 191 Iowa, 49, 181 N.W. 867. We are reinforced in this conclusion by the later legislative recognition of the fact that schools within the purview of chapter 107 were charging or might charge tuition in excess of that provided for in that statute. See chapter 189, Sess. Laws 1925. Plaintiff concedes that under chapter 107, supra, the defendant board was clothed with discretion to determine whether it had facilities for seating and instruction for his children *Page 242 
and that its determination in this regard will not be disturbed by the courts except in case of manifest abuse. There cannot be any doubt that this is the rule. It is consistent with the whole educational scheme. See §§ 1179, 1251 (subsec. 14), and 1300 Comp. Laws 1913. See also Wilson v. Board of Education, 233 Ill. 464, 15 L.R.A.(N.S.) 1136, 84 N.E. 697, 13 Ann. Cas. 330; Com. ex rel. Boyd v. Wenner, 211 Pa. 637, 61 A. 247; Peterson v. School Bd. 73 Mont. 442, 236 P. 670; 24 R.C.L. 576. Plaintiff insists that in the instant case there was an abuse of discretion in that respect. The trial court found that in fact the ordinary facilities which the defendant board was able to provide with the revenues derived from available sources were no more than sufficient for the resident pupils. We think that this finding is well sustained by the evidence. While the board did receive and enroll 134 nonresident pupils it was able to do this only by overcrowding its school rooms and overloading its teachers. It was compelled in order to receive them to use both the attic and the basement of its building and to overcrowd these rooms as well. It had to enlarge its classes above the number ordinarily considered proper and to increase the burden of its teachers. Without the tuition charged and paid it would have been unable to furnish teachers, service, supplies, etc. It can make no difference that the board informed itself in advance as to the probable number of nonresident pupils who would attend and made preparation accordingly. Its previous experience enabled it to do this and to compute the probable cost. There was nothing reprehensible in so doing; rather, such a course was commendable. Certainly it was businesslike. Clearly there was no arbitrary and unreasonable exercise of discretion on the part of the defendant board. It follows, we think, since there were no facilities for seating and instruction such as required the board to receive nonresident pupils under § 1 of chapter 107, supra, that when the board in order to accommodate nonresident pupils applying for admission formulated a plan whereby it might provide facilities for them by charging as tuition the proportionate cost of caring for each of such pupils, the plaintiff had no ground for complaint. The pupils were received as a matter of grace and favor, and not as a matter of right.
Plaintiff insists that the exclusion of his children resulted in an unfair discrimination against them; that even though the defendant *Page 243 
board might charge a tuition fee of $94, nevertheless, that charge must be imposed upon all nonresident pupils alike. We think that the plaintiff is right in his contention that all nonresident pupils must be treated alike and the board may not arbitrarily enroll some and exclude others. People v. Moore,240 Ill. 408, 88 N.E. 979. We do not agree that there was any discrimination in this particular case. Plaintiff's children had attended the defendant's high school in the year 1924-25. The same conditions existed then as in 1925-26. The same charge was made for tuition against nonresident pupils. Payment was not exacted prior to enrollment and his children being enrolled plaintiff refused to pay. Litigation resulted and the defendant board was unable to collect. We think in view of this experience that the defendant board was not acting unreasonably when it refused to receive and enroll plaintiff's children until the tuition charge for them had been paid, or assurance given that it would be paid. Plaintiff complains because of alleged discrimination on the part of the board. In fact to have received his children without requiring them to comply with the requirement as to tuition would have resulted in discrimination in their favor and against those other nonresident pupils who were required to pay. He seeks to enjoy privileges made possible by the contributions of others, but refuses to contribute himself.
Plaintiff further contends that in fact his children were received and enrolled as pupils in the defendant's high school on the 7th day of September, 1925, although they were not so noted in the school records; that they were assigned to classes and received instruction; that under the provisions of § 1251 (subd. 11), Comp. Laws 1913, the defendant board having so received and enrolled them they could not thereafter be refused the privileges of the high school. It appears that when the boys presented themselves on the 7th day of September, they were advised that they could not be enrolled unless the tuition, as required, was paid. They were not formally enrolled but were permitted to remain in the school pending adjustment of the differences between plaintiff and the school board. They and the plaintiff knew what the position of the board was with respect to the matter. Plaintiff cannot, under the circumstances, say that they were enrolled and that the subsequent denial of school privileges by the defendants when he refused to comply with its requirement worked any injustice or hardship upon the children. *Page 244 
There was no expulsion. The board was simply enforcing a regulation which it had properly passed and of which the children as well as the plaintiff had notice.
The judgment of the district court must be affirmed.
CHRISTIANSON, Ch. J., and BURKE and JOHNSON, JJ., concur.