## ADAMS v. MILES et al.

No. 1210—5052.

Commission of Appeals of Texas, Section B.

Feb. 4, 1931.

Perkins & Floyd, of Alice, for plaintiff in error.

L. Broeter, of Alice, for defendants in error.

SHORT, P. J.

The plaintiff in error is a resident citizen of Jim Wells county and a taxpayer in common school district No. 12 of said county. Two of the defendants in error are trustees of said district, another is the superintendent of public instruction of Jim Wells county, and the other is the depository for the funds of said district.

The plaintiff in error sought an injunction against the defendants in error to restrain them from paying out the funds of the school district to build a home for teachers, on the alleged ground that the action contemplated by the school authorities is without authority of law, and will result in damage to him as a taxpayer. The judge of the district court of Jim Wells county authorized the issuance of a temporary writ of injunction, which was issued, but, upon a final hearing, after the local school authorities had filed their answer, and also a motion to dissolve the temporary injunction, the writ was dissolved. The plaintiff in error appealed from this judgment to the Court of Civil Appeals at San Antonio, and, upon a hearing of the case in that court, the judgment of the district court was affirmed. 300 S. W. 211. The application for writ of error was granted because of the importance of the question, and also because of the pendency of the case of City of Dallas v. Mosely, wherein the Court of Civil Appeals at Dallas had upheld the school authorities of that city in the use of local funds for the establishment of a health department. 286 S. W. 497. The judgment of the Court of Civil Appeals has been affirmed since the granting of the writ of error in this case in an opinion by Judge Critz of section A, Commission of Appeals. 17 S. W.(2d) 36.

The answer of the school authorities, acting in their several capacities as school officers of the district of Jim Wells county, shows that they had purchased a bill of lumber for the purpose of building a school house on land owned and controlled by the district, to be used as living quarters for the teachers of the school, and for such other purposes as the trustees of the district might deem proper, paying therefor to the extent of $360 out of the state available school fund belonging to said district; the remainder of the purchase money for the lumber being paid out of the local maintenance fund. The answer further shows that the proper school officers had determined, before the purchase of the lumber, that it was necessary, in the conduct of the school, to have a house for the use of the teachers as living quarters, and further that there had been reserved more than sufficient funds for conducting and maintaining the school of the district for eight months during that year.

The district judge necessarily found these allegations to be true, since no other testimony than the sworn pleadings was before him upon the trial of the case. The judgment of the district court shows that the legal conclusion was reached by virtue of article 2827, R. S. 1925. This article reads as follows:

"The public free school funds shall not be expended except for the following purposes:

"1. The State and county available funds shall be used exclusively for the payment of teachers' and superintendents' salaries, fees for taking the scholastic census, and interest on money borrowed on short time to pay salaries of teachers and superintendents, when these salaries become due before the school funds for the current year become available; provided that no loans for the purpose of payment of teachers shall be paid out of funds other than those for the then current year.

"2. Local school funds from district taxes, tuition fees of pupils not entitled to free tuition and other local sources may be used for the purposes enumerated for State and county funds and for purchasing appliances and supplies, for the payment of insurance premiums, janitors and other employees, for buying school sites, buying, building and repairing and renting schoolhouses, and for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees, the accounts and vouchers for county districts to be approved by the county superintendent; provided, that when the State available school fund in any city or district is sufficient to maintain the schools thereof in any year for at least eight months, and leave a surplus, such surplus may be expended for the purposes mentioned herein."

It is the contention of the plaintiff in error, among other things, that the proposed action of the school authorities is in violation of article 7, § 3, of the state Constitution, and also of article 2797 of R. S. 1925, which is as follows:

"Any common school district or independent school district, whether created by special act of the Legislature or by vote of the people, and any city or town which has assumed control of its public schools, may issue serial coupon bonds in the same manner as provided by law for the issuance of other bonds to build and equip school houses and to purchase sites therefor, for the purpose of purchasing or building a teachers' home and for purchasing land in connection therewith, provided no bonds shall be issued to provide a home in a district employing fewer than three teachers in a single school."

■ A school district is a quasi corporation of a public nature, and the trustees of said district cannot lawfully expend money belonging thereto except for the purposes authorized by statute. The power of a school corporation is much more limited than that of ordinary public corporations. There is no general power possessed by a school corporation to expend public funds not especially conferred by law or necessarily implied from the language of the statute authorizing such expenditure. Section 3 of article 7 of the Constitution authorizes a provision for funds to be used annually for the benefit of the public free schools of the state. The fund thus provided for is termed "the available school fund," and this available school fund, arising from all sources mentioned in this section of this article of the Constitution, is intended to maintain and support the public schools of this state for a period of not less than six months in each year, supplemented as the Constitution authorizes by appropriation out of the general fund of the state.

■ This section of this article also provides for the raising of an additional fund to that which we have been discussing, by empowering the Legislature to authorize "an additional ad valorem tax to be levied and collected within all school districts heretofore formed or hereafter formed, for the further maintenance of public free schools, and for the erection and equipment of school buildings therein; provided that a majority of the qualified property tax paying voters of the district voting at an election to be held for that purpose, shall vote such tax not to exceed in any one year one ($1.00) dollar on the $100.00 valuation of the property subject to taxation in such district." The revenue derived in this way is termed a local fund as contradistinguished from the state available fund secured by the constitutional method set out in the first part of this section of the

article of the Constitution. No local fund can be legally levied and collected until the same has been authorized in the mode prescribed in the Constitution for the exercise of the power to levy and collect such taxes. Crabb v. Celeste Independent School District, 105 Tex. 194, 146 S. W. 528, 9 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146.

However, the board of trustees of a common school district, such as this, is especially authorized to do almost anything deemed necessary in their judgment to accomplish the purposes stated in section 1 of article 7 of the Constitution to the effect that "a general diffusion of knowledge, being essential to the preservation of the liberties and rights of the people, it shall be the duty of the legislature of the state to establish and make suitable provision for the support and maintenance of an efficient system of public free schools." This board is authorized to use the public funds to pay premiums upon insurance policies issued to cover every school building in the state whose title is listed either in the state, county, or district. It has the right to acquire property by purchase or gift and hold the same in trust for the benefit of the district, as well as the right of eminent domain, and to lease, receive, hold, transmit, and convey the title to real and personal property for school purposes. It further has the power to sue and contract and to defend suits brought affecting the rights and powers of the particular school district of which the board is the representative. In article 2749 it is provided that:

"Said trustees shall have the management and control of the public schools and public school grounds; and they shall determine how many schools shall be maintained in their school district, and at what points they shall be located; provided, that not more than one school for white children and one school for colored children shall be established for each sixteen square miles of territory or major fraction thereof, within such district; and they shall determine when the schools shall be opened and when closed. They shall have the power to employ and dismiss teachers; but in case of dismissal, teachers shall have the right of appeal to the county and State Superintendents. They shall contract with teachers and manage and supervise the schools, subject to the rules and regulations of the county and State Superintendents; they shall approve all claims against school funds of their district; provided, that the trustees, in making contracts with teachers, shall not create a deficiency debt against the district."

The Court of Civil Appeals, in its opinion in this case, among other things, very pertinently and correctly says, in speaking of the propriety to appropriate surplus funds in the

hands of school trustees of a common school district, to the construction· of a home for teachers:

"It is not difficult to conceive of conditions existing in some school districts, especially those in remote communities, which would render such facilities desirable. Those facilities in some cases, depending upon the conditions in particular· districts, would undoubtedly enable the trustees to procure better and more experienced teachers, under more advantageous contracts of employment, would house the teachers in close proximity to the school rooms, affording constant oversight and protection of the school properties. It is perhaps a matter worthy of judicial notice that many progressive school communities in the state * * * have provided homes or dormitories for their faculties. The Legislature has recognized the desirability and necessity of this improvement in independent and common school districts by authorizing the issuance of bonds, when voted, for the purpose of buying sites and constructing 'teachers' homes' in connection with the schools." ·

In this connection it may be said that the records in the department of education show that 1,330 of these teacher's homes have been constructed and are now in operation in various parts of the state. While we agree with the conclusion reached by the Court of Civil Appeals that article 2797, above quoted, which authorizes the issuance of bonds for the purpose of buying sites and constructing teacher's homes in connection with school districts is an express recognition of the power of school districts, to thus provide for the construction of teacher's homes, we do not agree that, under the facts in this case, article 2827 furnishes lawful authority for the use, by the board of trustees, of· the $360 belonging to the state available fund of that district in the purchase of lumber with which to build a teacher's home for that district.

■■■ In their motion to dissolve the injunction, which was granted by the district court upon the authority of its recitations alone, the defendants in error, among other things, say:

"They did on August 29, 1927, purchase a bill of lumber from Engelking Lumber Company of Orange Grove, ·Texas, for the purpose of building a school house on land owned or controlled by said District; that said school ·house when erected is to be used by the Trustees of said District as living quarters for the teachers of said school, or for such purpose ·as to the trustees of said district may seem proper or necessary in the conduct of said school. These defendants say that they issued and approved two vouchers in favor of said Lumber Company in payment of said lumber, one of said vouchers being for $350.00 on the Local Maintenance

Fund and one voucher for $360.00 on the State Available Fund of said District; that said vouchers were issued on August 29th, 1927, and were on said date paid by the Alice State Bank & Trust Company, which is the County Depository for the School Funds of Jim Wells County, Texas; that said vouchers were issued under the authority of the Statutes of this State and particularly Article 2827, Secs. 1 and 2 of the Revised Civil Statutes of Texas, 1925, and for the purpose of building a school house to be used for the purposes mentioned herein; * * * These defendants allege that the aforesaid vouchers were paid out of the surplus funds of said district; that same were paid out of the funds remaining on. hand after conducting the schools of said district for at least eight months during the school year 1926 and 1927, and before said school year had expired; that after said vouchers had been paid there still remained to the credit of the funds of said district a considerable amount of money which would be carried over to the credit of said district for the school year 1927 and 1928; these defendants further say that all debts incurred by said district for 1926 and 1927 have been paid by said district and that there will be more than sufficient money to· the credit of the funds of said district to conduct the· schools thereof for the year 1927 and 1928; that said funds will be derived from the State Available Fund and a local maintenance tax levied by said district for 1927; that $15.00 per capita on 169 scholastics will be paid to said district out of the State Available Fund and a tax·of Forty cents on the $100.00 valuation will be collected on property situated in said district and valued at over $450,000.00; that said funds will be available for the year 1927 and 1928, and the same will be sufficient to conduct the schools of said district for more than eight months during said school year and meet all expenses thereof."

It will be observed from the statements made in the motion to dissolve the injunction that the defendants in error are proposing to build a teacher's home with funds partly derived from those received from the state, which funds are denominated in article 2827 "The State and County Available Fund," the use of which is prohibited by said article, except for the purposes named in subdivision 1 thereof under the facts of this case. It is true that the law permits the trustees of a common school district to use the state available fund for the purposes named in subdivision 2 of said article, under the conditions stated in the proviso of said article. That proviso states, in effect, that the state available school fund may be expended for the purposes mentioned in subdivision 2 of said article, when the schools of the common school district have been maintained in any

one year for at least eight months by the use of the state available fund, and there is a surplus left of such fund, after such use for such length of time, in which event such surplus may be expended for any of the purposes for which local school funds, from district taxes, etc., might lawfully be used. But the statement in the motion to dissolve the injunction does not present such a condition as that prescribed by the law, and, in the absence of proof of that fact, the motion to dissolve the injunction ought not to have been sustained.

■ It is apparent that it is, and has been, the public policy of this state, as evidenced by the organic law and the various legislative acts dealing with the public free school system, as applicable to common school districts, to permit the local authorities of these districts to use the local funds belonging thereto for any reasonable purpose deemed by them sufficient, having relation to the conduct of the schools in that district. This policy is evidenced by many legislative declarations, too numerous to discuss in this opinion. This public policy has recently found expression by the appellate court in the case of City of Dallas v. Mosely, 286 S. W. 497, wherein Chief Justice Jones of the Court of Civil Appeals of the Dallas district held that, under article 2827, the school board of the city of Dallas was authorized to expend local funds for necessary purposes to be determined by the board, evidently basing the conclusion reached upon the fact found by the Court of Civil Appeals that the funds purposed to be used by said board to establish a health department were exclusively local funds. Based upon this finding of fact, in connection with other facts in the case, the Commission of Appeals sustained the judgment rendered in that case by the Court of Civil Appeals, wherein it is held that express power has been given by article 7, § 1 of the Constitution, and by article 2827, subd. 2, of the statute, to school authorities to do incidental things reasonably proper and necessary to accomplish the end of maintaining an efficient system of public free schools. 17 S. W.(2d) 36.

■ The case last discussed is clearly distinguishable from this case by the fact that in the first case mentioned the school authorities were proposing to use local funds to establish a health department, while in the case at bar the school authorities were proposing to use state funds under conditions not prescribed by the law. It will be noted that article 2827. declares that "the public free school funds shall not be expended except for the following purposes." It is clear that the authorities of common school district No. 12 in Jim Wells county were proposing to violate this provision of the law, and were endeavoring to use public free school funds for an unlawful purpose. The only basis upon which the trial court acted in the rendition of its judgment is found in the motion filed by the defendants in error to dissolve the writ of injunction. It is a familiar rule of construction that pleadings must be construed most strongly against the pleader when the judgment of the court is based exclusively upon such pleadings. It is no answer to assert that there might have remained a surplus of $360 out of the State available fund belonging to this district, after deducting from the original aggregate sum all of the expenses necessary to maintain the schools in that district for eight months in the year, without intrenching upon the local funds belonging to the district. That might be true, but the record does not so state.

■ The plaintiff in error filed a sworn petition, the legal sufficiency of which is not seriously questioned, except upon the facts stated in the motion to dissolve the injunction beyond the plea to the jurisdiction, which the trial court and the Court of Civil Appeals properly overruled, though an inspection of this petition indicates that it is subject to many special exceptions, which, had they been urged, would probably have been sustained. However, the judgment of the court was rendered upon the facts stated in the motion to dissolve the injunction, and, as these facts show that the defendants in error were proposing to illegally use a part of the public free school funds, we are constrained to hold that the defendants in error were not entitled to have the motion sustained.

The plaintiff in error's first assignment of error challenges the action of the court in overruling the plaintiff in error's general demurrer to the defendant in error's motion to dissolve the writ of injunction, and this assignment we sustain.

■ The third assignment of error of the plaintiff in error, in effect, asserts the proposition that the only funds which can be used in the building of teacher's homes must be derived from the sale of bonds authorized by article 2797, R. S. 1925. We overrule this assignment. As we have held heretofore in this opinion, conditions may exist in a common school district which would authorize the local school authorities to use funds belonging to the district, which are not the proceeds of the sale of bonds issued under article 2797, though the facts of this case do not present such condition. Article 2797 merely provided that bonds may be voted, issued, and sold, and the funds used in the building of teacher's homes, but this article does not prohibit the local school authorities, under proper conditions, from using local funds for any purpose thought necessary by them to carry out the provisions of section 1, article 7, of

the Constitution, provided that the conditions prescribed by the law exist. Should they not exist, then, by virtue of article 2797, funds may be provided for the express purpose of building teacher's homes by carrying out the provisions of this article. We do not find it necessary to discuss the remaining assignments of error which relate to the same matters which we have already discussed.

However, the plaintiff in error is in error to the extent that he claims that the local school authorities of this district are without lawful authority to use local funds in the building of a home for teachers, under the conditions prescribed by article 2827. Should this local fund be insufficient for that purpose, or should there not be any part of the local fund, which is available for that purpose, then, under article 2797, funds might be provided to build a teacher's home. In other words, the method for raising funds, provided by article 2797, is not exclusive, other conditions being present.

■ We have not discussed the right of a qualified tax-payer to question the authority of the local authorities in common school districts to use public funds in the building of teacher's homes, when there is no reasonable necessity thereof, since the record in this case does not present this question. The law gives the right to the taxpayer to prevent local authorities from using public funds to build teacher's homes where it can be shown that the discretion vested in such authorities to so use such funds is being abused by pursuing the course indicated by the statute on this subject.

We therefore recommend that the judgment of the Court of Civil Appeals affirming that of the district court be reversed, and, as the case has not been heard upon any testimony, except that furnished by the pleadings, we recommend that it be remanded to the district court for further hearing and final trial. We also recommend that the costs incurred in the Court of Civil Appeals and in the Supreme Court be adjudged against common school district No. 12 of Jim Wells county, Tex., to be paid out of the local fund of said district in due course of administration, and that the remaining portion of the costs be paid by the losing party in the trial of the case upon the merits.

CURETON, P. J.

Judgments of the Court of Civil Appeals and district court are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.