E. C. PALMER et al., Appellants,

v.

DISTRICT TRUSTEES OF DISTRICT NO. 21, a Body Corporate, Appellee.

No. 6870.

Court of Civil Appeals of Texas.

Texarkana.

March 22, 1956.

Rehearing Denied April 19, 1956.

Looney E. Lindsey, Power, McDonald & Mell, Gilmer, for appellants.

Fulton, Hancock & McClain, Hollie G. McClain, Edwin M. Fulton, Gilmer, for appellee.

FANNING, Justice.

Plaintiffs-appellees, the District Trustees of District No. 21 of Upshur County, Texas (Glenwood Common School District No. 21), filed suit to set aside an order of the County Board of Trustees of Upshur County, Texas, entered September 6, 1955, which order of the Board transferred a number of students from Glenwood Common School District No. 21 of Upshur County, Texas, to East Mountain Common School District No. 31 of Upshur County, Texas, and sought an injunction to restrain the County Board from attempting to put the order into effect and to restrain the defendants Mrs. L. M. Bain and Mrs. Clayton Willis from picking up and transporting said students to the East Mountain School, and also sought an injunction to restrain the East Mountain District from receiving, accepting or instructing said students, and plaintiffs-appellees also sought damages against defendants.

The trial court, upon application of appellees for a temporary injunction, held a hearing, and at the conclusion of such hearing, found that the order of the County Board of September 6, 1955, was void in so far as it purportedly transferred 21 named students. Although appellees prayed for an injunction to restrain the County Board from attempting to put the transfer order in effect, the trial court did not grant same. The trial court, however, granted appellees the following injunctive relief as a temporary injunction, to-wit:

"It is therefore, further ordered, adjudged and decreed by the Court that the Clerk of this Court issue a writ of injunction pending final hearing and determination of this cause against:

"1. The defendants, Mrs. L. M. Bain and Mrs. Clayton Willis, restraining them, and each of them, from transporting the students above named, or any of them, (except the Robertson and Tucker children or students),

from the Glenwood Common School District No. 21 to the East Mountain School located in the East Mountain Common School District No. 31, and from delivering said children to said East Mountain School for the purposes of being instructed by said school;

"2. The East Mountain Common School District No. 31, a body corporate, restraining it, its agents, servants and employees, from receiving and instructing any of the students above-named, (except Tommie Robertson and Jamie Evans Tucker), and enjoining it not to permit said students to attend said East Mountain School."

The defendants-appellants have appealed from the above temporary injunction granted by the trial court.

Appellants by several points contend in essence that irrespective of whether the transfer order in question was void or not, the admission and teaching of the students in question by the voluntary act of the East Mountain school was not illegal, that the transporting of said students by Mrs. Bain and Mrs. Willis in their private conveyances was not illegal, and that there was no authority in law for the trial court to grant the temporary injunction in question.

The transfer order in question was entered at a special meeting of the County Board of Trustees. Notice of the special meeting was not given to one member of the Board, Mr. J. C. Duncan, President of the Board, and he did not participate in the meeting. This order was clearly void under the following authorities: Art. 2687, Vernon's Ann.Civ.St.; 1 Tex.Jur.Supp., sec. 23, p. 109; Webster v. Texas & Pacific Motor Transport Co., 140 Tex. 131, 166 S.W.2d 75; Houston & North Texas Motor Freight Lines v. Johnson, 140 Tex. 166, 166 S.W.2d 78; Hildebrand on Texas Corporations, Vol. 2, p. 578, sec. 638.

Appellees also contend that the transfer order was also void and contrary to the pertinent transfer statutes on other plead-

ed grounds. We deem it unnecessary to specifically discuss these other contentions in as much as the order was so clearly void because the President of the Board was not notified of the special meeting and did not participate therein.

Even though the transfer order in question was void, the question arises as to whether the *voluntary* teaching of the children in question by the East Mountain district was illegal or unlawful, and whether the trial court was authorized to enjoin same on the petition of the Glenwood district alone where no qualified tax-payer of the East Mountain district assailed the action of the East Mountain school board as being detrimental to the East Mountain district to súch an extent as to constitute an abuse of discretion on the part of the East Mountain District Board. The question also arises as to whether the trial court had any authority to enjoin Mrs. Willis and Mrs. Bain from their voluntary action of transporting the students in their private motor vehicles to the East Mountain school.

Article 2922–13, sec. 1, V.A.C.S., reads in part as follows:

"* * * Provided that the attendance of non-resident scholastics whose grades are taught in their home districts shall not count towards teacher eligibility, unless the transfer of such scholastics has been approved by the County School Board and the State Commissioner of Education. * * *"

We think it is apparent from the above statutory provision that the Legislature knew that non-resident scholastics frequently do attend public schools other than in their home districts without being formally transferred thereto and apparently recognized same as legal and certainly not as unlawful or criminal. However, the result of such attendance without a formally approved transfer would be that no financial benefits from state funds under the teacher eligibility provisions of the Gilmer-Aiken Act would accrue to the school district teaching the non-resident scholastics.

Article 2827, V.A.C.S., reads in part as follows:

"The public free school funds shall not be expended except for the following purposes: * * *

"2. Local school funds from district taxes, *tuition fees of pupils not entitled to free tuition* and other local sources may be used for the purposes enumerated for State and county funds and for purchasing appliances and supplies, * * * *and for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees * * *.*" (Emphasis ours.)

The above statute apparently recognizes that (at least in certain instances where the local school board does not abuse its discretion in admitting scholastics not entitled to free tuition) local school boards may teach scholastics not entitled to free tuition and charge tuition therefor.

In Love v. City of Dallas, 120 Tex. 351, 40 S.W.2d 20, 30, it is stated:

"*For the same reason a school district cannot be compelled to render a service to a nonresident scholastic for less than a reasonable tuition fee. * * ** If we should say that this statute is mandatory, and regardless of other factors which are necessary to be considered in determining what would be a reasonable tuition fee, the city of Dallas must accept transferred pupils under it, then we would be compelled to say that the statute is unconstitutional and void. We think, however, in view of the construction we have given the act, that is that it applies only to pupils subject to the transfer statutes, its validity may be sustained to the extent of permitting it to apply to those districts whose trustees have decided that the acceptance of nonresident scholastics at a rate not in excess of the statutory amount will not be a detriment and may be of advantage to their districts

and compensatory for the facilities and services rendered. In other words, under our interpretation of the act, in connection with the transfer statutes, a sound discretion is left to the local school boards to determine whether or not, in view of all the circumstances surrounding their districts, the admission of nonresident scholastics will be prejudicial to the scholastics of their districts, and whether or not the statutory fee would be compensatory. *The discretion to be exercised by the local boards is quite similar to that which the statute had always permitted them to exercise with reference to the admission of 'pupils over and under scholastic age, either in or out of the district' into their schools. The control of our public schools has always been vested in local boards, and at no time have they had the right to admit pupils who pay tuition, when such admission would be prejudicial to the free school pupils of their districts.* R.S.1879, art. 3757; R.S.1895, art. 3960; R.S.1911, art. 2902; R.S.1925, art. 2904. The purpose of these statutes was not only to fix a sound public policy, but to make certain that the free school funds and properties would be devoted solely to the education of scholastics entitled thereto within the district or city. This reason, the basis of these statutes, makes it necessary for the local trustees to exercise a similar authority in the admission or rejection of nonresident scholastics who seek admission by transfer under the act before us. *This discretion to be exercised by the local boards will not be disturbed by the courts, except in cases of manifest abuse.* Todd v. Board of Education, 54 N.D. 235, 209 N.W. 369, 371; 24 Ruling Case Law, p. 575, § 24." (Emphasis ours.)

The case of Slocomb v. Cameron Independent School District, Tex.Com.App., 116 Tex. 288, 288 S.W. 1064, also holds that an independent school district may charge tuition for non-resident scholastics. This opinion points out that the Legislature unmistakably knew that tuition for non-resident pupils was being charged by schools and that for years it was the departmental construction of the State Department of Education, under the advice of the Attorneys General of this State, that such tuition could be charged. Also to the same effect are the following authorities: Muse v. McKinney Independent School Dist., Tex.Civ. App., 35 S.W.2d 780, and authorities cited therein.

Unquestionably, we think, the East Mountain School Board would have the discretionary authority to voluntarily admit and teach non-resident scholastics (even though they were not formally transferred under the transfer statutes) upon reasonable terms as long as the admission and teaching of such non-resident students would not be prejudicial or detrimental to the free school pupils of the East Mountain District.

In Trustees, Pleasant Grove Independent School Dist. v. Bagsby, Tex.Civ.App., 237 S.W.2d 750, 754, it is stated:

"It is a rule of universal application in this state, as well as in every other jurisdiction in this country, that the courts will not interfere with the exercise of discretion by school directors in matters confided to them by the law unless there is a clear abuse of the discretion or a violation of the law. Courts are disinclined to interfere with regulations adopted by school boards and they will not consider whether such regulations are wise or expedient; but merely whether they are a reasonable exercise of the powers and discretion of the school authorities. When they act reasonably within the powers conferred by law upon them it is the province of boards of education to determine what is detrimental to the successful management, good-order, well-being and progress of the schools under their jurisdiction and a presumption is always indulged by the courts in favor of the reasonableness and propriety of the rules and regulations

duly made by those in charge of educational institutions." (Citing authorities.)

In Adams v. Miles, Tex.Com.App., 35 S.W.2d 123, 127, it is stated:

"It is apparent that it is, and has been, the public policy of this state, as evidenced by the organic law and the various legislative acts dealing with the public free school system, as applicable to common school districts, to permit the local authorities of these districts to use the *local funds* belonging thereto for any reasonable purpose deemed by them sufficient, having relation to the conduct of the schools in that district. This policy is evidenced by the many legislative declarations, too numerous to discuss in this opinion. * * *

"We have not discussed the right of a qualified tax-payer to question the authority of the local authorities in common school districts to use public funds in the building of teacher's homes, when there is no reasonable necessity thereof, since the record in this case does not present this question. *The law gives the right to the taxpayer to prevent local authorities from using public funds to build teacher's homes where it can be shown that the discretion vested in such authorities to so use such funds is being abused by pursuing the course indicated by the statute on this subject.*" (Emphasis ours.)

Adams v. Miles, supra, was reversed on other grounds in Adams v. Miles, Tex.Com. App., 41 S.W.2d 21, wherein the Commission of Appeals held that under the facts the school board was authorized to expend the local funds in question for the construction of the teacher's home and affirmed the judgment of the Court of Civil Appeals which affirmed the judgment of the trial court dissolving the injunction in question.

The case of State ex rel. Moseley v. Welch, 218 S.C. 242, 62 S.E.2d 313, holds that plaintiff residents of one school district were not entitled to enjoin the furnishing of *free bus transportation* to pupils attending grammar school in adjacent school district in buses of adjacent district where costs of operating buses were paid from general county school funds and from transportation funds allotted by state, and no part of the costs were borne by school district in which plaintiffs resided.

Appellees contend to the effect that Art. 2892, V.A.C.S., and Article 297, Penal Code of Texas, Vernon's Ann.P.C. art. 297, authorize the granting of the temporary injunction. Art. 2892, V.A.C.S., reads in part as follows:

"Every child in the State who is seven years and not more than sixteen years of age shall be required to attend the public schools in the district of its residence, or in some other district to which it may be transferred as provided by law, for a period of not less than one hundred and twenty days."

Article 297, Penal Code of Texas, reads in part as follows:

"Every child in the State who is seven (7) years and not more than sixteen (16) years of age shall be required to attend the public schools in the district of its residence, or in some other district to which it may be transferred as provided by law, for a period of not less than one hundred and twenty (120) days annually."

Article 2892, V.A.C.S., although codified in the civil statutes, is a part of the same act which comprises the compulsory school law, which also includes Articles 297, 299 and 300 of the Penal Code of Texas. Article 299 of the Penal Code provides a criminal penalty for violation of the compulsory school law. Article 298 of the Penal Code provides certain exemptions from the compulsory school law, which among other exemptions exempts any child in attendance upon a private or parochial school which includes in its course a study of good citizenship and makes the English language the basis of instruction in all subjects. Art. 2892, V.A.C.S. and Art. 297, Penal Code, were also amended by the same act in 1935, by Senate Bill No. 49 of the 44th Legisla-

ture of Texas, Gammell's Laws of Texas, Vol. 29, p. 409. Sec. 3 of the act, the emergency clause, reads in part as follows:

"The fact that the State of Texas makes a substantial per capita apportionment each year to aid in the education of children from seven years old to sixteen, and that many children between these ages are not required *to attend the public schools, or other schools,* and thereby the public welfare and the welfare of these children are injured, creates an emergency * *." (Emphasis ours.)

Art. 297, Penal Code, was amended in 1939, by H.B. 652, of the 46th Legislature of Texas so as to add to that statute the word "annually" which had been omitted from the 1935 amendment.

Article 2892, supra, does not provide for any injunction to issue restraining any public school from the voluntary teaching of pupils of another district not formally transferred to the district. Nor do any of the provisions of the Penal Code nor any other statute so provide.

Art. 299, Penal Code of Texas, the penal provision of the compulsory school law, places the penalty upon *the parent or person standing in parental relation to the child* required by the compulsory school law to attend school. No penalty is attempted to be placed in the compulsory school law against another public school which voluntarily teaches a non-resident scholastic not legally transferred to such school. Clearly, the teaching of the children in question by the East Mountain district is not a crime and the East Mountain district could not be successfully prosecuted for teaching such children. The parents of the children in question were not made parties as such to the suit and the trial court did not grant a temporary injunction against the parents restraining them from sending their children to the East Mountain school—also the children were not made parties to the suit and no injunction was granted restraining them from attending the East Mountain school.

It is our view that the paramount purpose of the compulsory school law is to compel parents, or persons standing in parental relation to children subject to the compulsory school law, to see that such children attend school, irrespective of whether such school is a public school, private, parochial or denominational school, as long as such school teaches good citizenship and is conducted in the English language. Apparently no attempt has been made by the Glenwood district or the State to prosecute criminally the parents of the children in question for alleged violation of the compulsory school law. We have found no case where parents have ever been convicted of a crime in sending their children to a public school outside of their home district without a formal transfer where the children have been voluntarily accepted and taught by the receiving district. We are inclined to the view that where the parents make their own private arrangements with the school trustees of another public school district (outside of their resident district) to teach their children, where no formal transfer is had, such situation would be analogous to and similar to the situation where parents would make arrangements with a private school to teach their children and we do not believe that the parents would be guilty of a crime in doing so and could not be successfully prosecuted for doing so under the compulsory school law.

We also think that the trustees of the East Mountain district had discretionary authority to voluntarily receive and teach the children in question even though the children were not transferred by a valid transfer order—certainly the admission and teaching of the children in question was neither illegal nor criminal in any way. Ordinarily, of course, the trustees of a school district would probably charge tuition to non-resident scholastics not formally transferred and not entitled to free tuition at their school. Whether the voluntary teaching of the children in question by the East Mountain district without the payment of tuition would be a detriment to the East Mountain school district and would

constitute an abuse of discretion on the part of the East Mountain school trustees is a matter we think that could be raised only by *a qualified tax-payer of the East Mountain school district*. No qualified tax-payer of the East Mountain school district has sought injunctive relief against the East Mountain district trustees complaining that such trustees have abused their discretion in admitting and teaching the children in question. Appellees would have no justiciable right to raise the question that the teaching of the children in question by the East Mountain school district without the payment of tuition was a detriment to the East Mountain school district and an abuse of discretion on the part of the East Mountain school district trustees.

▰ We have also carefully reviewed the various transfer provisions of the statutory school law of Texas and have reached the conclusion that they primarily relate to the financial administration of school funds and were not intended by the Legislature to make criminal or illegal the voluntary teaching by a school district of non-resident scholastics not formally transferred to such district. However, for a school district to receive financial benefits from the State for teaching transferred non-resident scholastics, the transfers must be lawfully made and be lawfully approved by the County Board and by the State Commissioner of Education. The transfers in question in this case were made at a special meeting not properly called and were consequently void. The penalty for this is that undoubtedly the State Commissioner of Education will not approve the transfers and that no financial benefits from the State of Texas will be given to the East Mountain district by reason of the transfer order in question. The State Commissioner of Education was not made a party to this suit. However, we must assume, of course, that he will follow the law and will not allow payment of state funds to the East Mountain district by reason of the void transfers.

Appellees contend that the enforcement of the void transfer order is an invasion of their property rights for which they are entitled to an injunction. They cite numerous authorities to the effect that where a criminal law is unconstitutional and void and its enforcement will result in irreparable or substantial injury to *vested property rights* that an injunction will be authorized. Among the cases cited by appellees to this effect are: Barkley v. Conklin, Tex.Civ. App., 101 S.W.2d 405; Shupe v. City of Fort Stockton, Tex.Civ.App., 123 S.W.2d 408, 409, and other authorities. In Shupe v. City of Fort Stockton, supra, it is stated:

"* * * As a general rule the aid of a court of equity cannot be invoked to enjoin criminal prosecution. City of Austin v. Austin City Cemetery Ass'n, 87 Tex. 330, 28 S.W. 528, 47 Am.St.Rep. 114; Greiner-Kelley Drug Co. v. Truett, 97 Tex. 377, 79 S.W. 4. It is only where it may be made to appear that the enforcement of a void ordinance will substantially injure the *property rights* of a plaintiff that he is entitled to injunctive relief (Bielecki v. City of Port Arthur, Tex.Com.App., 12 S.W.2d 976 * * *."

▰ As above stated, we do not think that it was either criminal or illegal for the East Mountain district to voluntarily receive and teach the students in question under the facts in this case. Although no injunction was sought against the parents as such, as above stated, we do not think they would be in violation of the compulsory school law under the facts in this case. It is our further view that the Glenwood district had no vested property rights in the children in question so as to compel them to go to school at Glenwood against their desire and the desire of their parents by the civil remedy of mandamus or injunction. Clearly, in this State parents cannot be compelled by mandamus or injunction to send their children to the school district of their residence if they do not desire to do so, especially where the parents send such children to a private, parochial, denominational, or other public school which teaches good citizenship and is conducted in the English language, with which

they can make satisfactory private arrangements to teach such children.

There is no statute which specifically authorizes the trial court to grant the injunction in question.

We have not found any authority which would authorize the trial court to enjoin the voluntary transporting of the students in question by Mrs. Willis and Mrs. Bain to the East Mountain school in their private motor vehicles. We think Mrs. Willis and Mrs. Bain had the constitution right under our State and National Constitutions to voluntarily transport said children, with the permission of their parents, to the East Mountain school; that such actions were neither criminal nor illegal in any manner, and that the trial court was not authorized to grant the injunction against Mrs. Willis and Mrs. Bain.

We hold that even though the transfer order was void and that the East Mountain district is not entitled to financial benefits from the State of Texas under this particular transfer order, that nevertheless under the facts in this cause the trial court was not authorized to grant the temporary injunction in question.

The judgment of the trial court granting the temporary injunction in question against the East Mountain School District and against Mrs. Willis and Mrs. Bain is reversed and judgment is here rendered dissolving said temporary injunction.

Reversed and judgment rendered dissolving temporary injunction.

HALL, C. J., concurring.

DAVIS, J., disqualified and not sitting.

HALL, Chief Justice (concurring).

I heartily concur in the above opinion by Justice FANNING. I think he discusses clearly the controlling issues brought forward and, in my judgment, correctly disposes of the case.