McPHAIL et al. v. TAX COLLECTOR OF VAN ZANDT COUNTY et al. (No. 9701.)*

(Court of Civil Appeals of Texas. Dallas. Dec. 12, 1925. Rehearing Denied Jan. 16, 1926.)

1. Schools and school districts ⚖➝22—Act, authorizing formation of rural high school district, not unconstitutional.

Acts 39th Leg. (1925) c. 59, authorizing county school trustees to form rural high school district is not unconstitutional, in that it authorizes county board to consolidate common school districts into high school districts, of its own motion, without majority vote of electors in district, in view of plenary power of Legislature, under Const. art. 7, § 3.

2. Schools and school districts ⚖➝22—Act, authorizing formation of rural high school district, not void, because automatically destroying common school districts without providing for payment of indebtedness.

Acts 39th Leg. (1925) c. 59, authorizing formation of rural high school district, is not void, because destroying common school districts without providing for payment of outstanding bonded or other indebtedness, in view of express provision in act that outstanding indebtedness cannot become common obligation without majority vote of electors of districts.

⚖➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 17, 1926.

3. **Schools and school districts ⊚⟿42(2)—Collecting same local taxes in consolidated rural high school district, as previously authorized, is proper.**

Where rural high school district is formed by consolidating common school districts, collecting same local taxes as previously authorized by elementary districts is proper, though majority vote of electors in district has not authorized assumption of outstanding indebtedness, in view of Acts 39th Leg. (1925) c. 59, § 12.

4. **Statutes ⊚⟿48—Act, authorizing formation of rural high school district, held not to contain inconsistent provisions.**

Provision of Acts 39th Leg. (1925) c. 59, that trustees of elementary districts, after consolidation into high school district, shall continue in control until close of current scholastic year, but may not exercise authority thereafter, *held* not inconsistent with provision requiring high school trustees, immediately on election or appointment to organize board, appoint assessor of taxes, board of equalization, and cause property to be assessed and values equalized, etc.

5. **Schools and school districts ⊚⟿103(1)—Special assessment may be greater than assessment for state and county purposes.**

Assessment of property for independent school districts by county assessor may not be at greater value than for which such property is assessed for county and state purposes, but assessment by special assessor may be at greater value, in view of Rev. St. 1925, art. 2792.

6. **Schools and school districts ⊚⟿103(1)—Raising assessed valuation of property in consolidated school district not shown fraudulent.**

Acts of assessor and equalization board of rural high school district, formed under Acts 39th Leg. (1925) c. 59, in doubling assessed valuation of property over assessment for county purposes, to pay outstanding indebtedness of common school districts, teachers, and other expenses, *held* not fraudulent or arbitrary, in absence of discrimination or greater valuation than fair market value for cash.

7. **Evidence ⊚⟿48— It is common knowledge that tax officials construe assessment law to require only that property cannot be valued at greater amount than fair market value in cash.**

It is common knowledge that state, county, and municipal tax officials construe the provision requiring property to be assessed at fair market value in cash to be directory, and that it simply signifies that property cannot be valued at greater amount, without offending statute and Constitution.

8. **Schools and school districts ⊚⟿103(1)—Failure to swear to and certify to tax rolls prior to September 1st, held not to vitiate entire assessment.**

Where tax rolls for rural high school district, formed under Acts 39th Leg. (1925) c. 59, were completed and delivered to county tax collector prior to September 1st, failure of assessor to swear, and board of equalization to certify, to rolls until September 18th, *held* not to vitiate entire assessment; statute regulating time for performance of these duties being directory.

9. **Schools and school districts ⊚⟿103(1)—Tax assessment for rural high school district not void because of failure to assess property of two taxpayers.**

Failure of assessor of rural high school district to assess property of two taxpayers *held* not to nullify entire assessment, it being duty of owner to render and pay tax, and, on failure to do so, assessor must attach omitted tax to assessment for succeeding year in view of Rev. St. 1925, art. 1047.

10. **Schools and school districts ⊚⟿110—Trustees of newly formed rural high school district improperly enjoined from using funds for purposes other than maintaining schools in elementary districts.**

Trustees of rural high school district, formed under Acts 39th Leg. (1925) c. 59, have duty to establish high school, in addition to maintaining elementary schools of consolidated district, and injunction from using tax funds for any purpose other than maintaining schools in elementary districts and paying indebtedness of districts respectively was improper, in absence of actual or threatened violation of law or abuse of discretion.

11. **Schools and school districts ⊚⟿92(1)—Trustees of newly formed high school district must administer bond funds separately from maintenance funds.**

In maintaining elementary schools of consolidated district, established under Acts 39th Leg. (1925) c. 59, and in establishing and maintaining high school, trustees of district must keep and administer bond funds separately from maintenance funds, and likewise bond fund of one elementary district should be kept separate from bond fund of other.

Appeal from District Court, Van Zandt County; Joel R. Bond, Judge.

Suit by J. D. McPhail and others against the Tax Collector of Van Zandt County and others. From a decree refusing most of the relief sought, plaintiffs appeal. Affirmed in part, and reversed and rendered in part.

Gentry & Gentry, of Tyler, and R. M. Lively, of Canton, for appellants.

James M. Shields, of Canton, and Wynne & Wynne, of Wills Point, for appellees.

LOONEY, J. This appeal is from an interlocutory order of the trial judge on an application for a temporary injunction. Appellants, as taxpaying property owners in the Colfax high school district of Van Zandt county, brought suit against the state and county tax collector of Van Zandt county, the county superintendent of public instructions, and the county school trustees of said county; also the board of trustees of the Colfax rural high school district, to enjoin the collection of taxes levied by the trustees

on property within the district belonging to appellants.

Their prayer for temporary relief was that the county superintendent should be restrained from in any manner recognizing as such the board of trustees of the Colfax rural high school district, and from approving any act of said trustees; that the trustees of said high school district should be restrained from performing any act in furthering said high school enterprise; that the county school trustees should be restrained from recognizing any acts of the trustees of the high school district; that they should be required to recognize the Clowers common school district and the Colfax common school district as they existed prior to the attempted consolidation of them into the Colfax rural high school district; and that the state and county tax collector should be restrained from recognizing the assessment of the property of appellants and others in the high school district, and from collecting any taxes assessed against their property and the property of others situated in the pretended high school district.

On hearing, the judge refused all relief sought, except wherein appellants prayed that the funds derived from the collection of taxes on property situated in the high school district should not be used for the maintenance of the Colfax rural high school, or to pay any indebtedness of said district, unless the qualified electors in the high school district should decide by a majority vote to assume the indebtedness of the common school districts, and, until this result is attained, the tax money collected should be expended exclusively for the purpose of maintaining schools in, and paying the indebtedness of, the common school district from which the fund was collected. Both sides complain of the order of the court.

The facts are these: After the Act of the 39th Legislature became effective. being chapter 59, providing for a better system of rural high schools for the state, the county school trustees of Van Zandt county, in conformity to the provisions of said act, formed the Colfax rural high school district by grouping two contiguous common school districts, to wit, the Colfax district and the Clowers district, having less than 400 scholastic population, and, as the district was created subsequent to the date for the election of trustees fixed by law, the county board appointed 7 trustees for the district.

Immediately after their appointment, the trustees organized the board, and levied a tax on the property in the district at the same rate that had been theretofore levied by the trustees in the respective common school districts. The trustees appointed a tax assessor, a board of equalization, and caused the property in the consolidated district to be assessed and the values thereof equalized by the board of equalization. The tax rolls

as thus completed were delivered to the county tax collector for collection prior to September 1, 1925, but were not sworn to by the assessor, nor certified to by the board of equalization until September 18, 1925. By an oversight of the assessor, the property of J. W. and C. W. Mullens, two landowners and property tax payers in the district. was omitted from the tax rolls.

The assessment of the property in the high school district was accomplished in this way: The assessor copied the rendition sheets of the taxpayers within the consolidated district made to the county assessor, fixing the value of the property thereon the same as it had been rendered by the owners to the county assessor. The board of equalization in performing its duty raised these values practically double.

Lands in the consolidated district were of the actual fair market value of from $25 to $30 per acre, and appear on the tax rolls of the high school district as thus assessed and equalized, at from $20 to $25 per acre; in other words, the land as assessed for taxation in the high school district is not valued in excess of its true fair market value. The record fails to disclose anything with reference to the rendition of any other class of property.

The object sought to be attained by the officials of the high school district in levying the tax, assessing and equalizing values of the property above mentioned, was to raise a sufficient sum of money to pay the bonded and other indebtedness of the two common school districts, and to maintain the high school and the elementary schools within the consolidated district. At the time of the consolidation there existed against the Colfax common school district a bonded indebtedness of approximately $9,500, and against the Clowers common school district a bonded indebtedness of over $1,000, but less than $1,500.

The propositions urged by appellants for reversal, as gathered from their original petition, will appear from the discussion as follows:

[1] 1. That the Act of the 39th Legislature, c. 59, p. 204, of the Session Acts, by authority of which the county school trustees of Van Zandt county formed the Colfax rural high school district, is unconstitutional and void, for the reason that it authorizes the county board, of its own motion, to consolidate common school districts into high school districts without a majority favorable vote of the qualified electors of said common school districts.

The act called in question in section 1 empowers the county board of school trustees, of its own motion, to create rural high schools by grouping contiguous common school districts having less than 400 scholastic population. The pertinent portion of the act is as follows:

"Section 1. In each organized county in this state and in any county which shall hereafter be organized, the county board of school trustees shall have the authority to form one or more rural high school districts, by grouping contiguous common school districts having less than four hundred scholastic population and independent school districts having less than one hundred fifty scholastic population, for the purpose of establishing and operating rural high schools. *   *   * "

Thus we see the authority given the county board is absolute, and not dependent upon a prior vote having been taken by the qualified electors of the districts involved. It is further apparent that it was not the purpose of the Legislature to require either a petition or an election as a condition precedent to the action of the county board in creating rural high schools of the class mentioned, for the reason that in the following section 3, with reference to the creation of rural high schools containing more than 7 elementary districts, the action of the county board is conditioned upon a majority favorable vote by the qualified electors of the district. By expressly requiring a vote in the latter instance, the idea is excluded that such condition precedent was intended to apply to the action of the board in creating high school districts of less than 400 scholastics.

The Constitution, § 3, art. 7, with reference to the power of the Legislature to deal with the subject of public education in the creation of school districts, etc., provides:

*   *   * "And the Legislature may also provide for the formation of school districts by general or special law, without the local notice required in other cases of special legislation; and all such school districts, whether created by general or special laws, may embrace parts of two or more counties. And the Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts, and for the management and control of the public school or schools of such district, whether such districts are composed of territory wholly within a county or in parts of two or more counties. *   *   * "

This provision of the Constitution vests the Legislature with plenary power with reference to the creation of school districts. The Supreme Court, in the case of State v. Brownson, 94 Tex. 436, 61 S. W. 114, in construing this language of the Constitution, held that it gave to the Legislature a "free hand" in establishing school districts. This contention of appellants is not, in our opinion, well taken, and is overruled.

[2] 2. Appellants insist that the act of the Legislature is void, because the formation of a high school district under its provisions will automatically destroy the common school districts without provision being made for the payment of the outstanding bonded or other indebtedness of the common school districts. Connected with this proposition, the further contention is advanced that, as the indebtedness existing against the Clowers district, at the time the county board attempted the formation of the Colfax independent school district, was very much less than the indebtedness existing at that time against the Colfax district, the creation of the high school district will result in unequal taxation, in compelling the owners of property in the Clowers district, without their consent, to participate in the payment of the indebtedness against the Colfax district. This contention is unsound, for the reason that the act specifically provides that the outstanding indebtedness of the constituent common school districts cannot become the common obligation of the consolidated or high school district until, at an election, the qualified electors · of the district, by a majority vote, assume the outstanding obligations of the constituent districts. If, at such election, the question is decided in the affirmative, the trustees of the high school district are authorized to levy taxes on the property within the district at large to take care of the interests and sinking fund of the bonded indebtedness thus assumed. As no election had been held in the district to determine this question, the bonded indebtedness of each of the elementary districts remained a charge exclusively against the district issuing the bonds. However, until these bonds are retired, or assumed by the high school district in the manner above mentioned, the trustees are authorized, in fact it is their duty, to levy from year to year, and collect, a sufficient tax from the district issuing the bonds to discharge its obligation.

The secretary of the board of high school trustees is required to keep a complete itemized account of all receipts and disbursements in regard to bond funds, to be approved by the county superintendent and the county board of trustees at the end of each scholastic year. If these plain provisions of the statute are obeyed, no confusion will arise, and no unequal tax burdens in the respect mentioned could possibly result.

[3] 3. It is also contended that the acts of the high school trustees in levying the tax on the property within the combined district, the acts of the assessor of taxes in assessing the property, and the acts of the board of equalization in equalizing the values of the property, were all illegal and void, for the reason that the qualified taxpaying voters of the high school districts had not by a majority vote assumed the indebtedness of the two common school districts. This proposition is not tenable. The trustees levied, and were proposing to collect, the same local taxes previously authorized by the two elementary districts. This they were clearly authorized to do by the following provision of section 12 of the act:

*   *   * "Provided that the local taxes previously authorized by a district or districts included in a rural high school district *   *   *

shall be continued in force until such time as a uniform tax may be provided for the benefit of the rural high school district."

As no uniform tax had been voted, it was the duty of the trustees to do just as they did; that is, to levy on these districts respectively the same tax previously authorized by them.

[4] 4. Appellants insist that the statute is incapable of enforcement because it contains inconsistent provisions, in this, it provides that the trustees of the elementary districts shall continue in control of the schools in their respective districts until the close of the current scholastic year, to wit, September 1st, but are prohibited from exercising any authority of control or management of the schools after the date mentioned, and are forbidden to make any contract or do any act effecting the expenditure of any school funds after September 1st. The contention of appellants is that this provision is in irreconcilable conflict with the further provisions that require the high school trustees, immediately on their election or appointment, to organize the board, appoint an assessor of taxes, a board of equalization, and cause the property within the district to be assessed, the values equalized, the tax rolls completed and delivered to the county tax collector for collection, and to make contracts looking to the operation and management of the schools for the succeeding scholastic year. All this to be consummated prior to September 1st.

We fail to find any conflict between these provisions. The retiring trustees are to continue in control of the schools under the contracts negotiated by them to the end of the scholastic year, but, as they are expected on that date to relinquish all authority, and are to be succeeded in the management of the schools by the trustees of the high school district, the Legislature, in our opinion, very properly forbade them to make any contract involving the expenditure of money after their trusteeship had ended. In harmony with this idea, the high school trustees are required, immediately on their election or appointment, as the case may be, to organize the board, set in motion the taxgathering machinery, and make all necessary contracts for operating the schools during the new scholastic year.

[5] 5. Appellants contend that they, and other property owners in the districts similarly situated, will suffer from unequal imposition of tax burdens, in this, that, in order to raise a specified sum of money, neither the tax assessor, in assessing, nor the board of equalization in equalizing the values, considered the real value of their property, but arbitrarily and fraudulently assessed and valued the same in excess of its fair cash market value.

The facts, in our opinion, fail to sustain this contention. It is not shown that these properties were assessed for more than their fair cash market value, neither were appellants in any way discriminated against, as the property of all owners was valued on a uniform basis. The assessor copied from the assessment sheets in the county tax assessor's office the renditions made by the owners and, in this form, the assessment rolls were delivered to the board of equalization. The board, in the exercise of its judgment, raised the value of these properties practically double the amounts for which the owners rendered the same to the county assessor. Attorneys for appellants have not brought to our attention, nor have we been able to find, any law that prohibited the board from raising values in the manner and to the extent shown by the record.

The law provides with reference to the assessment of property for independent school districts, when assessed by the county assessor, that the same shall not be assessed at a greater value than that for which it is assessed for county and state purposes. If, however, the assessment is made by a special assessor, as in the case under consideration, property may be assessed at a greater value than that for which it was assessed for state and county purposes. Revised Statutes 1925, art. 2792 (2862). The act under consideration contains no similar provision, but the conditions under which it is permissible to assess property in independent districts at a greater value than that at which it may be assessed for state and county purposes are identical with the conditions that exist in these high school districts; hence we see no reason why the same rule should not apply. Finding nothing in the law that prohibits such procedure, we hold that the assessment in the respect mentioned is free from objection.

[6, 7] In regard to the further contention that the property was arbitrarily and fraudulently assessed and valued, we find nothing in the record from which such conclusion could be drawn, unless the same is inferable from the testimony of the tax assessor, to the effect that the value of all property in the high school district was increased by the board of equalization above the county assessments for the purpose of raising a sum of money sufficient to pay the outstanding indebtedness of the common school districts, and to pay teachers and other expenses incidental to the management of the schools in the two districts.

We find nothing objectionable in the fact that the value of these properties was increased in order to raise a specified sum of money for the purposes mentioned; in fact, the raising of money for these purposes furnished the only justification for the imposition of any tax at all. How else could the taxing authorities determine the tax rate to be levied, or the percentage at which the property should be valued, unless they took

into consideration the amount of money to be raised? It is a matter of common knowledge that our tax officials, state, county, and municipal, construe, and act upon the construction that, the provision of the law that requires property to be assessed at its fair market value in cash to be directory that it simply signifies that property cannot be valued for taxation at a greater amount without offending against statutory and constitutional provisions. We are of the opinion that so long as the tax levy is made for a purpose authorized by law, and the property is not valued for taxation at a greater sum than its fair market value for cash, and the assessment is without discrimination as between taxpayers, the procedure is immune from valid objection, although it may be true that the tax rate was determined, or the value of the property was fixed, with reference to the raising of a specified sum of money.

[8] 6. Appellants insist that the failure of the tax assessor to make oath to his rolls, and the failure of the board of equalization to certify to their correctness prior to September 1st, vitiated the entire assessment. We cannot agree to this contention. The evidence on this point is that the rolls were in fact completed and delivered to the county tax collector prior to September 1st, but were not sworn to by the assessor, nor certified to by the board of equalization until September 18th following.

The general rule is that provisions in statutes of this nature, regulating the duties of public officials with reference to the time for performance, are directory, and that their nonobservance will not vitiate the official acts involved. Lewis' Sutherland on Statutory Construction, § 612.

[9] 7. It is further contended that the assessment is illegal and void because certain property situated in the high school district belonging to two persons escaped assessment, and was not included on the assessor's rolls.

The failure of the assessor to assess the property of the two taxpayers was just such an omission as frequently occurs in the practical administration of tax laws. If such an oversight as this had the effect of nullifying an entire assessment, interminable confusion would prevail in regard to the collection of taxes; but such is not the case. The taxpayer's obligation is not thereby discharged, nor does his property escape taxation. The law anticipated that such mistakes would occur, and made provision for same. The general procedure is that, where property for any reason has escaped assessment for any year, it is the duty of the owner to render the same and pay the tax; but,

if he should fail to discharge this legal duty, it becomes the duty of the assessor to assess the property for the omitted year at the same rate under which it should have been assessed, and attach the assessment as a supplement to the regular rolls for the current year. While there is no definite provision to this effect in the statute under consideration, yet it is the rule applied in analogous situations (article 1047 [944] [504] [444], Rev. St. 1925), and is applicable here.

It is the duty of the tax assessor, under the statute in question, to make a complete legal assessment of all property in the district and this duty would not be discharged where an omission of this nature takes place, unless the property is assessed in a supplemental assessment as indicated above, or is brought forward on an unrendered roll, which procedure the assessor is also authorized to pursue.

After carefully considering the propositions contended for by appellants, we fail to find merit in either, and they are overruled.

[10, 11] Appellees, by cross-assignment, complain of the action of the judge in enjoining them from using the funds derived from the collection of taxes for any purpose other than to maintain schools in the elementary school districts, and to pay the indebtedness of these districts respectively.

This law charges the trustees of the high school district with the duty of maintaining the elementary schools of the consolidated district, and, in addition, are required to establish and maintain therein a high school, and, to accomplish these purposes, are authorized to use all available maintenance funds. Bond funds should be kept and administered separately from maintenance funds, and likewise the bond fund of one district should be kept separate from the other. Money belonging to a bond fund cannot be used for maintenance; nor can the bond fund belonging to either of the elementary districts be used in paying the indebtedness of the other.

The law commits the details of administration in these respects to the sound judgment of the trustees, and, as we find no evidence of either an actual or threatened violation of law or abuse of discretion on their part, the cross-assignment of error is sustained.

The order of the judge will be affirmed wherein he refused appellants certain relief, and will be reversed and rendered for appellees wherein he enjoined them in the respects hereinbefore mentioned.

Affirmed in part, and reversed and rendered in part.