I. B. CLARK et al., Appellants,

v.

CEDAR HILL INDEPENDENT SCHOOL DISTRICT et al., Appellees.

No. 15156.

Court of Civil Appeals of Texas.

Dallas.

Nov. 2, 1956.

Rehearing Denied Nov. 30, 1956.

---

Frank Cusack, Dallas, for appellants.

Claude D. Bell, Sr., Richardson, and Warwick H. Jenkins, Waxahachie, for appellees.

DIXON, Chief Justice.

Appellants, plaintiffs in the trial court, are 48 Dallas County residents, who are taxpayers of Cedar Hill Independent School District. Appellees, defendants in the trial court, are the School District, the seven School Trustees in their official capacity, and the Town of Cedar Hill, Texas.

Appellants' petition contains allegations of irregularities and discrimination, including the adoption by the taxing authorities of an illegal and fraudulent scheme in the assessing of property for taxation purposes. The prayer is for cancellation of the tax rolls of the School District and Town for the year 1955, for temporary and permanent injunction restraining appellees from collecting said taxes, and for mandatory injunction requiring appellees to assess appellants' property at the fair 1955 market value.

This appeal is from an order denying appellants a temporary injunction.

All the evidence offered came from appellees, their agents and employees. Though the parties do not agree as to the inferences to be drawn from the facts, nor as to their legal effect, the actual facts themselves are for the most part undisputed.

In February 1955 the School District employed an Assessor who immediately went about his task of determining the values of the real estate properties in the District. In July 1955 he advised the School Trustees that he had completed what he testified were tentative appraisals showing property values totaling about $4,200,000 based on 100% valuation. It was planned to use 60% of the full value for assessment purposes. This would have resulted in total valuations for tax purposes of $2,520,000. The Trustees told the Assessor what he says he already knew, namely, that such total appraisal would not raise sufficient revenue to enable the District to proceed with plans for the construction of a High School, hence the valuations should be raised. In this connection we quote the Tax Assessor's testimony:

"Q. When you completed your appraisal, that was a tentative assessment, was it not? A. A tentative?

"Q. Yes, sir. A. You mean on my part?

"Q. Yes, sir. A. That is right.

"Q. Those figures were the figures that you expected us to use in making up your tax roll? A. It was in the process of being made up, yes.

"Q. And from those figures? A. Well, I say it was in the process of being made up * * *.

"Q. What instructions, if any, did you receive from the School Board at that time? A. They gave me no official instructions. They said that was a little short of what it would take to get a school. I told them that I knew it.

"Q. Did they tell you what to increase them by? A. What to increase them by?

"Q. How much? A. They told me that it would take three million, at least three million and a hundred and ninety thousand to get the school, that I was short over $600,000.

"Q. And where did they instruct you to get that valuation from? A. They didn't instruct me any place to get it. They said to go back to the office and see if I couldn't figure out six hundred thousand more.

"Q. Those instructions were given on or about August 15th? A. No, sir, they were given to me at the meeting in July * * *."

Following the July meeting with School Trustees, the Assessor returned to his task of determining the property values for tax purposes. On August 15, 1955, by motion duly made and carried, the Board of Trustees instructed the Tax Assessor that an assessed valuation of $3,190,000 would be needed to meet the budget requirements for 1955-56. Sometime in August 1955 the Tax Assessor finished his appraisals, his completed and final list showing a total valuation for tax purposes of $3,182,602. The additional valuations were placed on farm lands, all of which lay within the geographical limits of the School District, but none of which lay within the geographical limits of the Town of Cedar Hill.

The Tax Assessor testified that the increase in valuations was placed against farm lands for the reason that the tentative appraisal for tax purposes on city property had already been made at a higher percentage of actual value than the tentative appraisals for farm lands. He further testified that the final assessment after the increase on farm lands, was equal, uniform, and fair as far as it was humanly possible to make it so.

On August 8, 1955, the School Trustees appointed a Board of Equalization consisting of three persons. Sometime in August 1955 the Tax Assessor submitted to the Board of Equalization his final completed list of tax assessment valuations in the total amount of $3,182,602. Thereafter the Board held meetings and hearings from time to time until December 30, 1955.

None of appellants had rendered his property except Mrs. Phena Anderson, Administratrix of the Estate of A. J. Anderson, Deceased. Mrs. Anderson had rendered the Estate's 2,299.30 acres of land at a valuation of $52,831.70. The Tax Assessor considered her rendition too low and assessed the said land at a valuation of $106,747. Pursuant to Article 1053, V.A.C.S., the Board of Equalization sent notice to Mrs. Anderson of a hearing to be held December 21, 1955 pertaining to the increased tax rendition and assessment. At the request of Mrs. Anderson's attorney and agent the hearing was postponed to December 30, 1955, at which time the hearing was held and evidence heard with Mrs. Anderson and her attorney and agent present. The Board of Equalization then approved the valuation of the Tax Assessor of $106,747 as the value of the Estate's land for tax purposes.

As the other appellants had not rendered their property for taxation purposes, the

Tax Assessor prepared and presented his appraisals and assessments of their property to the Board of Equalization pursuant to Art. 1052, V.A.C.S. On December 30, 1955 the Board approved these assessments, as prepared by the Tax Assessor. The total valuations approved by the Board of Equalization amounted to $3,182,602, which valuation was adopted by the School District as the basis for levying and collecting taxes for the year 1955.

The record shows that thirty of appellants paid their taxes prior to trial. Several of appellants were not named on the tax rolls. Tax suits were pending against about seventeen of appellants. Prior to trial about 77% of the total taxes of the School District had been paid. This suit was filed by appellants January 20, 1956.

The Town of Cedar Hill purchased a copy of the list of appraisals and assessments as prepared by the School District's Assessor. This list was used by the Town as a basis for preparing its tax roll.

The contentions of appellants as set out in their first four and their sixth points on appeal are predicated upon certain alleged facts which appellants contend are established by the evidence. These are the alleged facts: (1) That the Tax Assessor had completed his assessment of real estate values when he met with the Board of Trustees in July 1955; (2) that on that occasion the Board of Trustees themselves elected to act as a Board of Equalization; (3) that the Board of Trustees, acting as a Board of Equalization, thereafter ordered the Tax Assessor to increase the property valuations in order to obtain additional tax revenue; and (4) that pursuant to said orders the Tax Assessor arbitrarily raised values on farm lands without notice to the owners of said farm lands and without giving the owners a chance to be heard. It is the position of appellants that such actions by the Tax Assessor and by the Board of Trustees, acting as a Board of Equalization, were illegal and rendered the tax assessments void as to both the School District and the Town of Cedar Hill; consequently the trial court abused its discretion in refusing to grant a temporary injunction in favor of appellants.

In our opinion appellants' position is not well based as to the facts. The Tax Assessor testified, as shown by the part of his testimony heretofore quoted, that the list of valuations exhibited to the Board of Trustees in July 1955, was only a tentative list. We find no evidence in the record contradicting, challenging, or impeaching the Tax Assessor's testimony. Even if we were to hold that the Tax Assessor was an interested party whose uncontradicted testimony was not conclusive, but merely raised a fact issue, we would nevertheless be compelled to hold that the trial court impliedly decided such fact issue in favor of the School District and in support of the judgment rendered.

It is true, as appellants point out, that under Art. 2792 and Art. 1048, V.A.C.S., Boards of Trustees may elect to act also as Boards of Equalization. But whether they actually elect to do so is a fact question.

Appellants argue that the evidence in this case is so conclusive as to establish as a matter of law that the School Trustees did elect to act as a Board of Equalization. We are unable to agree. To the contrary the evidence shows the appointment in August 1955 of a separate Equalization Board composed of three members, none of whom were members of the Board of Trustees. It was these three persons who took their oaths of office as members of the Equalization Board, and proceeded to perform their duties as such. The Board of Trustees never at any time passed a motion or resolution appointing themselves as a Board of Equalization, took no oath as such, held no meetings as such, and never at any time, so far as we find in the record, suggested or changed the valuation placed on any one particular piece of property.

In truth, the evidence seems to us either to establish that the Trustees did not themselves elect to act as a Board of Equaliza-

tion, or at least to raise a fact issue on the question. In the latter event, we think, in view of the judgment rendered, that the trial court must necessarily have made an implied fact finding contrary to appellants' contention, which implied finding is binding on this Court.

■ Under Art. 2749, V.A.C.S., management and control of School District affairs are entrusted to Boards of Trustees. It is the duty of said Boards to raise and disburse an amount of money sufficient to defray the necessary and reasonable expenses of School Districts. The Board of Trustees in this case violated no law when they advised the Tax Assessor that it would take total valuations of $3,190,000 to produce the required amount of tax money. And the Board of Equalization violated no law when they went about their assessing and equalizing processes in such manner as to raise said amount. Jopling v. City of La Grange, Tex.Civ.App., 256 S.W.2d 901; Shriber v. Culberson, Tex.Civ.App., 31 S.W.2d 659; McPhail v. Tax Collector, Tex.Civ.App., 280 S.W. 260; Druesdow v. Baker, Tex. Com.App., 229 S.W. 493.

The record before us discloses, as we have already pointed out, that the final, complete list of assessment valuations was presented by the Tax Assessor to the Board of Equalization in August 1955. We find no instance in which the valuation as therein set out of property belonging to any of appellants was raised by the Board of Equalization without notice to the property owner. Appellant I. B. Clark appeared before the Board at one of its meetings and requested that the assessed valuation on his property be lowered. His request was denied. Other property owners appeared before the Board of Equalization and in some cases valuations against their property were lowered. These and other instances plainly show that the Equalization Board was functioning, that it heard witnesses, and that it was otherwise actively engaged at its task of attempting to equalize the taxes in the School District.

Appellants' first, second, third, fourth and sixth points are overruled.

■ In their fifth point appellants say that the tax roll should be set aside because one of the members of the Board of Equalization was interested in a contract with the School District, and for that reason the trial court abused its discretion in refusing the temporary injunction.

There is evidence in the record that the insurance on a school was written by Employers Casualty Company and that the agent through whom it was written was one of the members of the Board of Equalization appointed August 8, 1955. The record is silent as to whether the contract of insurance was made before or after the member's appointment to the Board. There is no evidence that the Board member in question wrongfully or fraudulently influenced the other members of the Board, or that his actions as a Board member were in any way affected by his having written the policy of insurance. Appellants have not attempted to show any harm to them traceable to the Board Member's connection with Employers Casualty Company. Until the contrary is shown, it is presumed that public officials have acted in good faith. Lubbock Hotel Co. v. Lubbock Independent School District, Tex.Civ.App., 85 S.W.2d 776.

We are well aware of the rule which forbids officers of municipal corporations to have a pecuniary interest in a contract with the corporation. Cases might be cited where officers have been prosecuted for fraud in connection with such contracts, or have been removed from office, or the contract itself has been declared unenforceable. But appellants have not cited us a case and we know of none where, under the circumstances presented here, a tax roll has been declared void because a member of an equalization board was an agent of the insurance company which had written a policy of insurance for the municipal corporation. Appellants' fifth point is overruled.

 Appellants in their seventh and eighth points assert that the School District and the Town of Cedar Hill adopted an illegal and arbitrary device and scheme to exempt personal property from taxation.

It is true that neither of appellees included personal property in its tax rolls. Certainly they should have included such property. However the burden was on appellants to show that the omission harmed them. There is no evidence in the record to show how much personal property escaped taxation, to whom it belonged, or what effect its omission had on any of appellants —that is, whether he had to pay more or less by reason of the omission than he otherwise would have been required to pay. Failing to show individual injury, no one of appellants can escape payment of his taxes because of the omission of personal property from the tax rolls, nor is he entitled to an injunction. Whelan v. State, Tex., 282 S.W.2d 378; City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414; State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569; Hutchinson v. City of Dallas, Tex. Civ.App., 290 S.W.2d 253. Appellants' seventh and eighth points are overruled.

 In their ninth and last point appellants attack the validity of certain annexation proceedings whereby the Town of Cedar Hill in 1953 took into its corporate limits property belonging to certain of appellants and is now attempting to subject said property to town taxes.

 Such an attack may be brought only by the State in a quo warranto proceeding. A private citizen may not assail an annexation proceeding by injunction to restrain collection of taxes. Floydada Independent School District v. Shipley, Tex.Civ.App., 238 S.W. 1026, affirmed, Tex.Com.App., 250 S.W. 159; Harris v. City of Port Arthur, Tex.Civ.App., 267 S.W. 349; Molyneaux v. Amarillo Ind. School District, Tex.Civ. App., 277 S.W. 185. Moreover the Legislature by validating statutes has cured whatever defects there may have been (we do not say there were any) in the annexation proceedings. Art. 974c–4, § 2; Art. 974d–4, §§ 2, 3 and 4; Art. 974d–5, § 2, V.A.C.S. Appellants' ninth point is overruled.

We think the trial court properly denied appellants' application for a temporary injunction. Certainly we cannot say that there was an abuse of the discretion which is vested in trial courts in the matter of granting temporary injunctions.

The judgment of the trial court is affirmed.