Lewis A. HARBERSON et al., Appellants,

v.

Herbert A. ARLEDGE et al., Appellees.

No. 16991.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 14, 1969.

Rehearing Denied March 21, 1969.

Gerald E. Stockard, and John L. Sullivan, Denton, for appellants.

Minor & Knight, Denton, Saner, Jack, Sallinger & Nichols, and B. Robert Baker, and Tim Kirk, Dallas, for appellees.

## OPINION

RENFRO, Justice.

More than eighty (80) taxpayers sued the Sanger Independent School District in an effort to enjoin the assessment and collection of certain taxes levied by the District for the year 1967.

A hearing resulted in denial of a temporary injunction. Following a jury trial, permanent injunction was denied and a judgment entered for the District for delinquent taxes alleged to be due by the individual plaintiffs.

Exhibit 3 shows:

"September 11, 1967

"The Sanger School Board met in Regular Session.

"All members present.

"Motion made by Jack Burkholder, seconded by Jr. Davis, to accept the plan to raise the assessed valuation by a figure of 2.4 and a contemplated decrease in the tax rate from $1.75 to $1.00 per $100.00 valuation and rate of 40% of the value. All members approved.

"President /s/ Donald R. Holson

"Approved: 10–11–1967

"Secretary /s/ Jack Burkholder"

Plaintiffs' original petition for temporary injunction was filed November 13, 1967. Plaintiffs filed their first amended petition on February 2, 1968. In the amended petition of February 2, 1968, they, for the first time, alleged the taxes were increased for an unlawful purpose, namely, to raise sufficient taxes for the school year 1967–8 to pay debts or deficiencies created during the school year 1966–7.

The jury found the plan adopted for the 1967–8 increase was for the intended purpose of using a portion thereof to pay off the deficit of $11,116.11 which accrued in the year 1966–7. No other issues were submitted or requested. Upon motion, judgment was rendered for the District notwithstanding the verdict.

Plaintiffs' chief point of error, which they argue ably and earnestly, is the tax increase is void because it was levied and assessed for an unlawful purpose, that is, the payment of an illegal deficit for the prior school year.

Although they failed to show that the prior debts were illegally incurred, we treat the point as though they were claiming the payment of such prior debts out of current taxes would be illegal.

The law is well established that current tax funds appropriated for operating the school on subsequent years cannot be used to pay obligations accruing during a previous school year. City State Bank in Wellington v. Wellington Independent School District, 142 Tex. 344, 178 S.W.2d 114 (1944); National Surety Corporation v. Friendswood Independent School District, 433 S.W.2d 690 (Tex.Sup., 1968); Aldine Independent School District v. Standley, 154 Tex. 547, 280 S.W.2d 578 (1955). An injunction will properly be granted to prevent a school board from so using current tax revenue. Warren v. Sanger Independent School Dist., 116 Tex. 183, 288 S.W. 159 (1926).

An injunction will also lie to restrain the collection of taxes levied and assessed without authority of law. Ripley v. Trinity River Canal and Conservancy Dist., 88 S.W.2d 752 (Tex.Civ.App., 1935, writ ref.).

In Eagle Lake Independent School Dist. v. Hoyo, 199 S.W. 352 (Tex.Civ.App., 1917, writ ref.), the court held: " * * * we do not think it appears from the evidence that any part of the 1914 maintenance tax upon the new district was actually applied upon the bonded debt of the old one, *nor if it had been,* that such fact alone would have invalidated an otherwise lawfully laid tax, and have given appellee a valid ground for resisting its payment; for, at most, such action would have amounted to an unlawful diversion from its proper application * * *." (Emphasis added.) If such payments were attempted, the District could be restrained upon proper injunction proceedings.

In their effort to prove the increase was void because assessed for an illegal purpose, the plaintiffs relied largely upon the testimony of the superintendent of the School District.

Superintendent Arledge testified that at the time he prepared the 1967–8 budget an emergency existed. The school had a growth problem. At that time the school was spending $20.00 per student below the average of $68.00 per student. After he prepared the budget the scholastic population increased by 90 students. If the tax had not been increased, the District, because of increased enrollment, would have incurred a deficit of $10,000.00 for the scholastic year 1967–8. Something had to be done to take care of the education of the children. The primary purpose of the increase in taxation was to build and expand to take care of the school children.

At the time the budget was prepared a $10,000 plus deficit existed for the year 1966–7. He reported the deficit to the School Board. He did *not* include the deficit in the budget. *He* intended to take care of the deficit out of state and local funds, but that was not the purpose of the tax increase.

The law authorizes the trustees to exercise a judicious discretion for the successful and economical management of the schools. Adams v. Miles, 35 S.W.2d 123 (Tex.Com.App., 1931).

Under Article 2749, Vernon's Ann.Civ. St., management and control of school district affairs are entrusted to Boards of Trustees. It is the duty of said Boards to raise and disburse an amount of money sufficient to defray the necessary and reasonable expenses of school districts.

The budget presented to and adopted by the trustees did not include any of the items making up the deficit except one short term loan obtained in 1966–7. The tax plan adopted by the trustees did not mention payment of deficits as a purpose for the valuation increase. None of the trustees were called as witnesses. There is no evidence, oral or documentary, from the trustees that the purposes or a purpose of the increase was to pay off the deficit.

The erroneous opinion of the Superintendent that he could pay some of the 1966–7 debts out of current tax rev-

enues is not sufficient to support a finding that the School Board adopted a tax plan to increase available school funds with the intention of using a portion to pay off a deficit.

The tax levied was not in excess of the statutory limit.

■■ Further, we find no evidence or stipulation that the deficit existed at the time of trial, or at the time the suit was filed. If the debts have been paid, plaintiffs' injunction suit is moot. Rawson v. Brownsboro Independent School Dist., 263 S.W.2d 578 (Tex.Civ.App., 1953, ref., n. r. e.). There is no proof the debts were invalidly incurred. This being so, they could be paid from "delinquent tax collections, or from devises or donations, or perhaps from other sources." National Surety Corporation v. Friendswood Independent School Dist., 433 S.W.2d 690 (Tex.Sup., 1968).

■ Under the evidence we must hold that the trustees acted in good faith and within the limits fixed by law. " 'So long as the levying officers keep within the statutory limits, the courts can not inquire into the necessity for the amount of the levy and except in a case of clear abuse of discretion they can not interfere to increase or reduce the amount of the levy, which is within the authority and discretion of the levying officers.' " Texas Co. v. Panhandle Independent School Dist., 72 S.W. 2d 957 (Tex.Civ.App., 1934, writ ref.); Madeley v. Trustees of Conroe Independent School Dist., 130 S.W.2d 929 (Tex. Civ.App., 1939, dism., judg. cor.); Rawson v. Brownsboro Independent School Dist., 263 S.W.2d 578 (Tex.Civ.App., 1953, ref., n. r. e.). In the Madeley case it was held: "In the absence of fraud in fact, the courts cannot limit the trustees of an independent school district in the exercise of the power vested in them to levy the tax."

The plaintiffs did not allege the deficiency aspect of the case until February 2, 1968. The tax plan had gone into effect in October, 1967. By February 2, 1968, more than 70 per cent of the school taxes had been paid.

The increased valuation was not limited to the plaintiffs but was assessed against all like taxpayers in the District. There is no contention the valuations fixed exceeded the actual cash market value of the property or that plaintiffs' assessments were substantially higher than property interests of equal or greater value owned by others.

■ The tax plan had been adopted prior to the filing of suit, and had been in operation more than three months before "illegal purpose" was pleaded by plaintiffs. Assuming, but not holding, that there were irregularities or that the proceedings were arbitrary, the burden was on the plaintiffs in an attempt to avoid the tax to show substantial injury. They had to show that their property interests were "assessed substantially higher than property interests of equal or greater value owned by others." State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569 (1954).

Said the Supreme Court in City of Arlington v. Cannon, 153 Tex. 566, 271 S.W. 2d 414 (1954): "There is no showing in the record and no finding by the trial court that the taxes, within themselves, of any of the individual plaintiffs were excessive. * * * to obtain relief from taxes arrived at through the use of an arbitrary, illegal and fundamentally erroneous plan of valuation, the taxpayer must show substantial injury." To the same effect are the holdings in State v. Federal Land Bank of Houston, 160 Tex. 282, 329 S.W.2d 847 (1959); City of Orange v. Levingston Shipbuilding Co., 258 F.2d 240 (5 Cir., 1958); Whelan v. State, 155 Tex. 14, 282 S.W.2d 378 (1955).

In City of Orange, supra, the court held: "It is merely an application of the approach consistently laid down that no matter how illegal the assessment, no matter how much it violates the State Constitu-

tional pattern, the only relief of a taxpayer defending delinquent tax suit is to show in dollars that he is worse off."

■ The plaintiffs failed to prove the tax increase was for an illegal purpose; therefore, the application for injunction to prevent the collection of the tax was properly denied. If there are probable grounds for believing that the Superintendent or trustees will attempt to spend part of the tax money legally collected for an illegal or unlawful purpose, their remedy is to seek by injunction the prevention of such expenditure.

The point of error is overruled.

■ In their second point of error plaintiffs argue the court erred in rendering judgment non obstante veredicto because the District did not file a motion for instructed verdict.

A motion for an instructed verdict is not required as a condition precedent to a subsequent motion for judgment notwithstanding the verdict. McDonald Texas Civil Practice, Vol. 4, pp. 1413–5, § 17.32.

The point is overruled.

■ In points 3, 4 and 5 plaintiffs contend the court erred because (P. 3) there was no proper equalization procedure, in that two boards of equalization were appointed, and, after the first board completed its work, the second board had no jurisdiction to act; (P. 4) the second board was illegally constituted because one member was not at the time of his appointment a qualified voter in the District; and (P. 5) second board not being legally constituted was not a de jure board, and could not constitute a de facto board for the reason the chairman of the board was appointed for an illegal purpose, towit: as part of an illegal scheme to levy taxes for an illegal purpose.

In view of our holding on point 1, we overrule point 5 without further discussion.

As we understand the record, a second action of the original equalization board was taken rather than an action by a second equalization board. There was one change in personnel between actions of the board. Chambers resigned and, according to the minutes of the trustees, "Mr. Don Edwards was appointed to the Equalization Board to replace Mr. W. B. Chambers who resigned."

On July 10, 1967, Baird, Chambers and Armstrong were appointed members of the Equalization Board. The District Tax Assessor gave them sheets showing the values of various properties. New houses, only, were assessed by the Board. Notices were sent to the property owners. Late in July the tax rolls were returned to the assessor. They thought their work was completed.

In November the Board was recalled, and instructed to re-assess the land by multiplying it all by 2.40 per cent.

Notices were sent to all property owners with the new assessments, including an invitation to appear before the Board. Apparently some taxpayers "talked" to the Board. They were told the School Board did the "raising."

There is no evidence that any taxpayer protested the increased valuations or requested a hearing.

The tax assessor testified he completed the tax assessments before July. He delivered them to the Equalization Board in July. In that month a meeting was held by the Equalization Board to hear protesters. In August he made out the tax roll for the year. In September the Superintendent told him not to mail the tax statements. He had nothing to do with raising the valuations.

He never asked the School Board what the tax rate would be, "they didn't know what the new rate would be, and we had to go ahead on the old one until they got the rate set for the new raise."

In Jopling v. City of La Grange, 256 S.W.2d 901 (Tex.Civ.App., 1953, ref.), the Board of Equalization, sitting for the City, after they had made adjustments in the valuations of all real and personal property assessed for taxes, added a 7% across the board raise for the purpose of enabling the City to meet its anticipated budget. The trial court held the act increasing the values was void. The appellate court held: "The fact that the needs of the city were made known to the Board and that it acted to meet those needs does not invalidate its action. * * * It is true that the Board was lawfully authorized to equalize property values with the view of placing an equal burden upon all property to be taxed, but to say the Board could not consider the amount of money needed to meet the lawful budget of the city and could not fix property values with reference thereto would deprive the Board of any justification to fix property values for the assessment of taxes."

In Shriber v. Culberson, 31 S.W.2d 659 (Tex.Civ.App., 1930, no writ hist.), the court, recognizing that the purpose of taxation is to raise required revenue, held there was nothing either illegal or wrong in the board of equalization fixing the value of property at an amount sufficient to raise the required revenue, provided said valuation does not exceed the actual cash market value of the property.

There is no contention by plaintiffs that the valuation fixed exceeded the actual cash market value of their property.

In Clark v. Cedar Hill Independent School Dist., 295 S.W.2d 671 (Tex.Civ. App., 1956, ref., n. r. e.), where the valuation was raised after notice to the property owners by the Board, the court held: " * * * the Board of Equalization violated no law when they went about their assessing and equalizing processes in such manner as to raise (sufficient taxes to operate the school) said amount." And in Superior Oil Co. v. Board of Trustees

of Magnolia I.S.D., 410 S.W.2d 504 (Tex. Civ.App., 1966, ref., n. r. e.), the court held an order fixing the value of taxpayer's property was properly set aside by a new equalization board and the assessed valuation increased, and "The later boards' actions were not shown to be invalid."

 Since the Board was legally constituted, Edwards was a de facto member thereof.

 It is unimportant whether Edwards was either a de jure or de facto member of the Board of Equalization. A majority of the Board can transact the business of the Equalization Board. Ferris v. Kemble, 75 Tex. 476, 12 S.W. 689 (1889); Conner v. City of Waxahachie, 13 S.W. 30 (Tex.Sup., 1889).

We reiterate that although we have found the tax plan adopted to be valid, even if illegal or arbitrary, once the plan was put into effect, plaintiffs could defeat the recovery of the taxes only to the extent that they were excessive and it is their duty to assume the burden of proving excessiveness. City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414 (1954). This plaintiffs did not do.

In our opinion the record shows that the primary purpose of the increased valuations was, as the Superintendent testified, to take care of the school children—that something had to be done to take care of the education of the students.

We hold that the manner in which the assessment and levy of taxes for 1967 was made, although unusual in some respects, was valid.

The court did not err in denying the permanent injunction, and in entering judgment for the District on its cross-action.

All points of error are overruled.

Affirmed.