**676**

A. G. FLORENCE et al., Appellants,

v.

**ASHERTON INDEPENDENT SCHOOL DISTRICT et al., Appellees.**

No. 15291.

Court of Civil Appeals of Texas, San Antonio.

April 17, 1974.

Rehearing Denied May 15, 1974.

Alfred F. Fitzpatrick, Carrizo Springs, for appellants.

J. C. Hinsley, Austin, for appellees.

BARROW, Chief Justice.

Appellants, A. G. Florence and Jose P. Garcia, have perfected this appeal from a take-nothing judgment in their suit for injunction against appellees, Asherton Independent School District, and the following officials of said school district: the seven members of the Board of Trustees, Margaret B. Casey, tax assessor-collector, Coleman Bailey, superintendent, and Catarina DeLeon, Lorenzo Jasso and Jesus Mata, members of the Board of Equalization. Appellants sought to enjoin appellees from collecting taxes in the district based on tax rolls approved by the defendant members of the Board of Equalization.

The Trustees appointed appellants and Sam Galvan, by letter of April 11, 1973, to serve as the Board of Equalization for the District for the year 1973 and set its first meeting for May 1, at 9:00 a. m. Appellants were present at such time, but Galvan did not appear, nor has he taken any part in the controversy involved herein. Superintendent Bailey was present and presented a brief financial picture of the District. Bailey was hired in July, 1972, and at such time the District was unquestionably in poor financial condition and the physical plant was in bad shape. The trustees decided to set up a separate tax office for the District instead of having Dimmit County assess and collect the District's taxes. Mrs. Casey was hired as tax assessor-collector, and she commenced to work up a list of property owners in the District. In April of 1973, the voters of the District approved an $800,000.00 bond issue to construct a new school plant. The sale of these bonds will require total assessments of almost $9,000,000.00 for the District.

Mrs. Casey furnished appellants a form on which suggested valuations were made for each type of property in the district; i. e. irrigated farm land was valued at $75.00, dry farm land at $50.00 and unimproved brush land at $25.00. These suggested valuations, although admittedly within the range of fair market value, were not acceptable to appellants, and they agreed between themselves that the above valuations should be reduced to $60.00, $40.00 and $17.50, respectively. These proposed valuations by appellants were not reduced to writing prior to noon when appellants recessed until May 15, 1973. In the meantime, the Trustees learned of appellants' unwillingness to go along with the suggested valuations, and prior to the scheduled second meeting of appellants, the Trustees discharged appellants from the Board of Equalization and appointed a new Board consisting of Catarina DeLeon, Lorenzo Jasso and Jesus Mata. The new Board met and was organized on May 17, 1973. After various hearings, the new Board approved the tax rolls on July 11, 1973, with a total assessed valuation of $4,733,949.00.[1] The valuations of the various types of real property were in line with those suggested to appellants by Mrs. Casey on May 1, 1973.

Section 23.93(d) of the Texas Education Code, V.T.C.A. (1972), provides in part: "The assessment shall be equalized by a board of equalization appointed for that purpose by the board of trustees of the independent school district." There is no provision in the Education Code for the removal of all, or any member of the board of equalization.

We have found only one case which considered such a problem. In Republic Insurance Co. v. Highland Park Independent School District, 129 Tex. 55, 102 S.W.2d 184 (Tex.1937), it was held that the attempted action of the trustees in discharging the assessor and the board of equalization manifestly because they had gone contrary to the wishes of the trustees as concerned the assessment of one taxpayer, was void. The Court said: "The idea that a board can be discharged at will, and a new one appointed for the sole purpose of passing on the valuation of one taxpayer's property alone, is contrary to the principle of fairness and equality supporting the necessity for such agency."

Nevertheless, it is not improper or unlawful for the trustees to request or suggest to the board of equalization the amount of valuations needed by the district. Harberson v. Arledge, 438 S.W.2d 591 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n. r. e.); McHale v. Coppell Independent School District, 381 S.W.2d 367 (Tex.Civ.App.—Dallas 1964, writ ref'd n. r. e.); Clark v. Cedar Hill Independent School District, 295 S.W.2d 671 (Tex.Civ. App.—Dallas 1956, writ ref'd n. r. e.); Jop-

---

1. It is seen that these suggested valuations did not produce the $8.9 million dollars assessed valuation necessary for the District to sell the construction bonds.

**678**

ling v. City of LaGrange, 256 S.W.2d 901 (Tex.Civ.App.—Austin 1953, writ ref'd). Furthermore, the trustees have the power to replace a board of equalization which has resigned. Superior Oil Co. v. Board of Trustees of Magnolia Independent School District, 410 S.W.2d 504 (Tex.Civ. App.—Eastland 1966, writ ref'd n. r. e.).

The limited question before us in this appeal is whether the actions of the new board of equalization are absolutely void so as to be subject to a collateral attack. Although a hearing was had on appellants' application for a temporary injunction on July 13, 1973, no appeal was perfected from the order denying same. At such time, the new board had already completed the statutory duty of equalizing the taxes and approving the tax rolls. The present posture of the case is that tax statements have been prepared and sent the individual taxpayers based on such approved tax rolls and the individual tax statements were due on or prior to February 1, 1974. Neither appellants, nor any other person, has complained of the tax rolls or of his own tax statement in the capacity of a taxpayer.

 It is now well settled that the assessment of property for tax purposes is a quasi-judicial function of boards of equalization and that no attack on valuations fixed by such boards can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation. City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414 (1954); State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569 (1954). In City of Waco v. Conlee Seed Company, 449 S.W.2d 29 (Tex.1969), it was held that collateral attacks upon the quasi-judicial judgments of boards of equalization are permitted upon proof of grossly excessive valuations which may be sufficient to establish fraud or illegality.

The new board of equalization was appointed by the Trustees, took their oath of office, entered on such office and per-

formed the duties of same to completion. Thus, the scheme or plan of taxation has now been fully implemented and put in operation. Presumably all or substantially all of the taxpayers have paid their taxes for 1973. The complaint before us has not been made by any taxpayer. Cf. Atlantic Richfield Co. v. Warren Independent School District, 453 S.W.2d 190 (Tex.Civ. App.—Beaumont 1970, writ ref'd n. r. e.); Briscoe Ranches, Inc. v. Eagle Pass Independent School District, 439 S.W.2d 118 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.). Appellants cannot now be heard to complain in the sole capacity of former members of the board of equalization.

The take-nothing judgment of the trial court is affirmed.